UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Alison Petri,<br><br>       Plaintiff,<br><br>v.<br><br>Delta Air Lines, Inc. and<br>Abigail Louise Trebnick-Emerson,<br><br>       Defendants. | Case No.<br><br>**Complaint**<br><br>*Jury Trial Demanded*<br>*Under Fed. R. Civ. P. 38* |

For her Complaint against Defendants, Plaintiff Alison Petri ("Alison" or "Plaintiff") hereby states and alleges upon knowledge, information, and belief as follows:

### Jurisdiction & Venue

1. This action involves a violation of Federal Aviation Administration ("FAA") regulation 14 C.F.R. § 121.575(b)(1), which confers original subject matter jurisdiction upon this Court.

2. Since original jurisdiction exists, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3. Alternatively, this Court also has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

4. Plaintiff Alison Petri was and is a citizen of the State of Minnesota.

5. Delta Air Lines, Inc. ("Delta") is a Delaware corporation with its principal place of business in Atlanta, Georgia.

6. Delta is a citizen of Delaware and Georgia.

7. Delta does business in Minnesota and did so at all relevant times.

8. Delta maintains continuous and systemic contacts with the State of Minnesota through the business it conducts in Minnesota, including its operation of daily flights from and to Minnesota.

9. Delta has a registered office address in Minnesota of 2345 Rice Street, Suite 230, Roseville, MN 55113.

10. Defendant Abigail Louise Trebnick-Emerson ("Trebnick-Emerson") is a citizen of the State of Wisconsin.

11. Trebnick-Emerson maintained continuous and systemic contacts with the State of Minnesota as an employee and/or other agent of Delta and/or one of Delta's subsidiaries.

12. Delta and Trebnick-Emerson shall be collectively referred to in this Complaint as "Defendants."

13. There is complete diversity of citizenship between Plaintiff and Defendants.

14. More than $75,000.00 is in controversy.

15. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## Factual Background

**A.   After being overserved, Trebnick-Emerson sexually assaulted Alison.**

16. Alison is in her early 40s, is a mother, and works for a charitable foundation in the field of water safety for children.

17.  On November 17, 2022, Alison was on a return flight home from Las Vegas to Minneapolis, flight number DL 2067 (the "flight").

18.  Alison was seated in the aisle seat of a three-seat row.

19.  Trebnick-Emerson was seated in the middle seat next to Alison.

20.  A gentleman was seated in the window seat.

21.  Trebnick-Emerson was employed and/or otherwise an agent of Delta and/or one of its subsidiaries.

22.  Trebnick-Emerson boarded the flight with a "crew" bag, indicating that she was a flight crew member, though she was not working on this flight.

23.  Trebnick-Emerson was traveling to Minneapolis on a "flight pass," meaning that she was traveling for free or a reduced rate because of her status as a Delta employee or agent.

24.  Alison and Trebnick-Emerson initially engaged in small talk.

25.  It quickly became apparent that Trebnick-Emerson was familiar with the Delta flight staff working the flight.

26.  While in flight, Alison and Trebnick-Emerson were served refreshments, including alcoholic beverages, by flight attendant Trent Daily ("Daily").

27.  Daily initially served Trebnick-Emerson two cans of wine.

28.  Each can of wine was 250 ml or approximately 8.5 oz.

29.  An example of the wine can is depicted below:




30. Later, Daily served Trebnick-Emerson another two cans of wine.

31. Trebnick-Emerson quickly drank the third can of wine.

32. Shortly thereafter, Trebnick-Emerson kissed Alison on the mouth.

33. Alison did not consent to this conduct.

34. Alison told Trebnick-Emerson not to do that.

35. Trebnick-Emerson also leaned her head on the shoulder of the gentleman next to her, which was also unwanted.

36. Alison then went to the back of the plane and expressed to Daily that she was concerned about Trebnick-Emerson's level of intoxication.

37. Alison also reported to Daily that Trebnick-Emerson had kissed Alison against Alison's wishes.

38. When Alison returned to her seat, Trebnick-Emerson had already consumed the fourth can of wine.

39. To Alison's surprise, Daily returned and served Trebnick-Emerson a bottle of water and a **fifth** can of wine, which Trebnick-Emerson quickly consumed as well.

40. Daily served Trebnick-Emerson this fifth can of wine despite knowing that Trebnick-Emerson was obviously intoxicated and a foreseeable danger to other passengers on the flight, particularly Alison.

41. Despite this knowledge, Daily did nothing to protect Alison and made matters worse by serving Trebnick-Emerson more alcohol, implicitly encouraging her behavior.

42. Following service of the fifth can of wine, Trebnick-Emerson continued her inappropriate behavior and kissed Alison on the cheek multiple times, which was unwanted and Alison told her so.

43. Trebnick-Emerson also continued to lean her head on the shoulder of the gentleman next to her.

44. As the plane began its descent, Trebnick-Emerson began "vaping" on the plane, creating plumes of smoke.

45. The flight attendants saw or should have seen the plumes of smoke created by Trebnick-Emerson's "vaping."

46. Alison took a photograph of the vape pen in Trebnick-Emerson's hands, as depicted below:



47. After landing and receiving permission to unfasten her seatbelt, Alison stood to collect her belongings from the overhead cabin.

48. As Alison attempted to retrieve her belongings, Trebnick-Emerson rubbed Alison's buttocks.

49. This conduct was unwanted and Alison told her so.

**B.   Delta's employees immediately laid the groundwork for an attempted cover-up.**

50. After departing, Alison reported Trebnick-Emerson's behavior to gate agents, including the assaults, and asked that they contact law enforcement.

51. The incident was also reported to Delta Airport Customer Service ("Delta ACS") at or about that time.

52. Daily learned about Alison's report shortly after arriving in Minneapolis and attempted to contact Trebnick-Emerson via Facebook Messenger texting.

53. Daily then attempted to contact Trebnick-Emerson via Facebook Messenger audio call three times immediately after learning about the report and investigation into Trebnick-Emerson.

54. Daily's efforts to contact Trebnick-Emerson are reflected in Exhibit A to this Complaint.

55. John Ris ("Ris"), a Delta employee who either was serving as or previously served as a Delta in-flight training manager, had also been working as a flight attendant on the flight.

56. Ris became aware of Trebnick-Emerson's extreme intoxication on the flight as well, but, like Daily, failed to take any reasonable measure to protect other passengers from the obviously intoxicated Trebnick-Emerson.

57. Ris, shortly after landing and learning of the investigation into Trebnick-Emerson, also immediately began sending messages via Facebook Messenger to Trebnick-Emerson.

58. The text chain of communication between Ris and Trebnick-Emerson is attached as Exhibit B to this Complaint.

59. The text exchange between Ris and Trebnick-Emerson reflects that Ris knew, at the time of the assault, that Trebnick-Emerson was extremely intoxicated and that Trebnick-Emerson claimed to have been so intoxicated that she did not remember assaulting Alison, as depicted in the image below:



60. It also reflects an indisputable conspiracy amongst Ris and Trebnick-Emerson to lie to all officials in an effort to protect Trebnick-Emerson and discredit Alison.

61. Ris, Daily, and other Delta flight attendants further conspired to protect Trebnick-Emerson by providing Delta ACS investigators with false and inaccurate information about the events of the flight that led to and resulted in Trebnick-Emerson's assault of Alison.

62. As Alison was reporting the assault to law enforcement, Trebnick-Emerson was attempting to depart the airport.

63. Trebnick-Emerson was so intoxicated that she fell twice trying to go up an escalator, as depicted in the images below (see also Exhibits C and D attached hereto, surveillance footage):



[the remainder of this page is intentionally left blank]



64.	Law enforcement was dispatched to Trebnick-Emerson because of her falls on the escalator.

65.	Trebnick-Emerson refused to be evaluated by first responders.

66.	The responding officer concluded that Trebnick-Emerson was so intoxicated that she could not care for herself, so he placed her on a medical hold and Trebnick-Emerson was transported by ambulance to Southdale Hospital.

**C.	Trebnick-Emerson is criminally convicted for her conduct towards Alison.**

67.	Trebnick-Emerson was initially charged with criminal sexual conduct in the fifth degree and disorderly conduct.

68. After the prosecutor dismissed the criminal sexual conduct charge, Trebnick-Emerson pleaded guilty to disorderly conduct. *See generally State v. Trebnick-Emerson*, No. 27-CR-22-24063.

69. As part of her guilty plea, Trebnick-Emerson admitted that "[o]n November 17, 2022, [she] engaged in physical contact with another passenger before deboarding the plane and said contact was offensive and tended to arouse alarm, anger, and resentment."

70. As a direct result of this assault, Alison pursued psychological counseling.

**D.  Delta flight attendants overserving passengers and preventing foreseeable sexually assaults by and to passengers on Delta flights is not an isolated incident.**

71. On July 26, 2022, a mother and her teenage daughter were sexually assaulted on a Delta flight from New York to Greece by a passenger who was overserved on that Delta flight. *See A.A. v. Delta Air Lines, Inc.*, No. 23-cv-5591 (NGG/SJB) (E.D.N.Y., filed July 25, 2023).

72. The Complaint from *A.A. v. Delta Air Lines, Inc.* is attached as Exhibit E.

73. On June 16, 2018, Delany Luh was sexually assaulted by an intoxicated and overserved passenger on a Delta flight from Chicago to Los Angeles, with a stop in Minneapolis. *See Luh v. Delta Air Lines*, No. 3-18-cv-406 (TRM/HBG) (E.D. Tenn., filed Sept. 24, 2018).

74. The Complaint from *Luh v. Delta Air Lines* is attached as Exhibit F.

75. On July 15, 2016, a woman was sexually assaulted aboard a Delta flight from Detroit to Myrtle Beach. *See Costigan v. Delta Airlines, Inc.*, No. 2:17-cv-11903 (BAF/SDD) (E.D. Mich., filed June 15, 2017).

76. The Complaint from *Costigan v. Delta Airlines, Inc.* is attached as Exhibit G.

77. Not only did Delta fail to take meaningful action to train and supervise its employees after its own failures, FBI offices across the country have issued statements since at least 2018, warning about the increase in sexual assaults on aircrafts.

78. Delta also continued to fail its passengers after Alison was assaulted.

79. On July 16, 2023, an intoxicated passenger, who was traveling and served on a Delta flight from Atlanta to SeaTac, Washington, sexual assaulted another passenger. *See USA v. Roberson*, Case No. MJ23-358 (W.D. Wash., filed July 17, 2023).

80. The criminal Complaint for Violation in *USA v. Roberson* is attached as Exhibit H.

## Count One
### Violation of 14 C.F.R. § 121.575(b)(1)
*Plaintiff v. Delta*

81. Plaintiff realleges all preceding allegations of this Complaint as if fully stated herein.

82. 14 C.F.R. § 121.575(b)(1) states that "[n]o certificate holder may serve any alcoholic beverage to any person aboard any of its aircraft who— (1) Appears to be intoxicated."

83. Delta employees continued to serve Trebnick-Emerson with alcoholic beverages despite the fact that Delta employees knew or should have known that Trebnick-Emerson was obviously intoxicated.

84. Delta is vicariously liable for the conduct of its employees, including Daily.

85. As a direct and proximate result of Delta's negligence, Plaintiff incurred and will incur medical bills, emotional distress, embarrassment, and pain and suffering.

86. Delta's conduct warrants an award of punitive damages.

**Count Two**
**Negligence - Common Carrier Liability**
*Plaintiff v. Delta*

87. Plaintiff realleges all preceding allegations of this Complaint as if fully stated herein.

88. Delta is a common carrier.

89. As a common carrier, Delta owed Plaintiff the highest duty of care to protect Plaintiff from foreseeable dangers.

90. Delta breached that duty, through its employees for whom it is vicariously liable, as described herein.

91. As a direct and proximate result of Delta's negligence, Plaintiff incurred and will incur medical bills, emotional distress, embarrassment, and pain and suffering.

92. Delta's conduct warrants an award of punitive damages.

**Count Three**
**Minnesota Dram Shop**
*Plaintiff v. Delta*

93. Plaintiff realleges all preceding allegations of this Complaint as if fully stated herein.

94. Delta had a duty to not engage in the illegal serving of alcohol pursuant to Minnesota Statute Section 340A.801, subdivision 1.

95. Delta breached that duty, through its employees for whom it is vicariously liable, by serving Trebnick-Emerson with alcohol when Delta staff knew or should have known that she was obviously intoxicated.

96. As a direct and proximate result of Delta's negligence, Plaintiff incurred and will incur medical bills, emotional distress, embarrassment, and pain and suffering.

97. Delta's conduct warrants an award of punitive damages.

98. Notice of this claim was properly given pursuant to Minnesota Statute Section 340A.802.

**Count Four**
**Negligence and Negligence Per Se**
*Plaintiff v. Delta and Trebnick-Emerson*

99. Plaintiff realleges all preceding allegations of this Complaint as if fully stated herein.

100. Delta and Trebnick-Emerson had a duty to act reasonably.

101. Delta and Trebnick-Emerson breached their duties by the conduct described herein.

102. Delta is vicariously liable for the conduct of its employees as described herein.

103. Delta is also directly negligent for, among other things, its failure to reasonably train and supervise its employees.

104. Trebnick-Emerson's conduct is *per se* negligent because Trebnick-Emerson's conduct towards Plaintiff violated Minnesota Statute Section 609.72.1(3).

105. As a direct and proximate result of Delta and Trebnick-Emerson's negligence, Plaintiff incurred and will incur medical bills, emotional distress, embarrassment, and pain and suffering.

106. Delta and Trebnick-Emerson's conduct warrants an award of punitive damages.

**Count Five**
**Assault and Battery**
*Plaintiff v. Trebnick-Emerson*

107. Plaintiff realleges all preceding allegations of this Complaint as if fully stated herein.

108. Trebnick-Emerson intended to and did cause Plaintiff to fear imminent offensive contact and had the ability to cause the offensive contact.

109. Trebnick-Emerson made offensive contact with Plaintiff.

110. As a direct and proximate result of Delta and Trebnick-Emerson's negligence, Plaintiff incurred and will incur medical bills, emotional distress, embarrassment, and pain and suffering.

111. Trebnick-Emerson's conduct warrants an award of punitive damages.

**Plaintiff Alison Petri hereby demands a trial by jury.**

WHEREFORE, Plaintiff Alison Petri prays for judgment as follows:

1. As to Count One, a money award for compensatory and special damages in excess of $75,000.00 in addition to pre- and post-judgment interest, costs, disbursements, punitive damages, and all other relief the Court deems just and equitable.

2.      As to Count Two, a money award for compensatory and special damages in excess of $75,000.00 in addition to pre- and post-judgment interest, costs, disbursements, punitive damages, and all other relief the Court deems just and equitable.

3.      As to Count Three, a money award for compensatory and special damages in excess of $75,000.00 in addition to pre- and post-judgment interest, costs, disbursements, punitive damages, and all other relief the Court deems just and equitable.

4.      As to Count Four, a money award for compensatory and special damages in excess of $75,000.00 in addition to pre- and post-judgment interest, costs, disbursements, punitive damages, and all other relief the Court deems just and equitable.

5.      As to Count Five, a money award for compensatory and special damages in excess of $75,000.00 in addition to pre- and post-judgment interest, costs, disbursements, punitive damages, and all other relief the Court deems just and equitable.

**NEWMARK STORMS DWORAK LLC**

Dated: November 17, 2023

/s/ Jeffrey S. Storms
Jeffrey S. Storms, #387240
Naomi E. H. Martin, #402332
222 South 9th Street, Suite 470
Minneapolis, MN 55402
Phone: 612.455.7055
Fax: 612.455.7051
jeff@newmarkstorms.com
naomi@newmarkstorms.com

**Attorneys for Plaintiff**