# EXHIBIT A

 **Trent Daily**

# Trent Daily

Facebook

You're not friends on Facebook

22 mutual friends including Alex Murr and Ann Zaborowski

NOV 17 AT 11:29 PM

Hi its Trent the flight attendant from Las Vegas can u call me at 6123278313

 **Missed audio call**
Tap to call back

 **Missed audio call**
Tap to call back

 **Missed audio call**
Tap to call back

NOV 18 AT 11:06 AM

 **Audio call**
Tap to call again

Hi Trent, please give me a call today if you can 🙏

You can now message and call each other and see info like Active Status and when you've read messages.

Aa

 
Missed audio call
Tap to call back

**Missed audio call**
Tap to call back

**Missed audio call**
Tap to call back

NOV 18 AT 11:06 AM

**Audio call**
Tap to call again

Hi Trent, please give me a call today if you can 🙏

You can now message and call each other and see info like Active Status and when you've read messages.

DEC 15 AT 8:57 PM

Hey Trent, I just wanted to check in with you. I already contacted John too. The woman filed charges against me based on false accusations and lies. I haven't made any statements to Delta, but I had to hire a criminal defense attorney. Would it be possible for him to talk to you to get your statement in support of my defense please?

Aa

# EXHIBIT B

12:46

  **John Ris**



# John Ris

Facebook

You're friends on Facebook

Lives in Minneapolis, Minnesota

NOV 17 AT 11:46 PM

Hi Abby, I just worked the LAS-MSP flight, that you were pass riding on. Not sure if you're aware that the woman sitting next to you was very upset about your behavior. She got Delta ACS management involved and they tried to get a statement from us, but we denied knowing anything and left. Just wanted to give you a heads up, in case you get a call, etc..



NOV 18 AT 11:05 AM

Omg, John. I just saw this. I don't know what happened. We had a nice conversation on the airplane. Do you know what she said??

Do u have any idea what she might

 
NOV 18 AT 11:05 AM

Omg, John. I just saw this. I don't know what happened. We had a nice conversation on the airplane. Do you know what she said??

Do u have any idea what she might have said? 😨

 You kissed her. I know she came to the back and told Trent, but she didn't appear to be "upset!?" I don't know what she shared with the ACS manager though.

Omg, I did??

 Yeah, you were pretty bombed.

I'm so sorry to have put you in that position. I was traveling for my grandmother's funeral today

I apologize to you and Trent!! I'm so sorry

I'm sorry to hear that. We're cool with it, it didn't put us in a bad spot. Just wante ↓ give you a heads up and make sure you're

Aa


I apologize to you and Trent!! I'm so sorry

I'm sorry to hear that. We're cool with it, it didn't put us in a bad spot. Just wanted to give you a heads up and make sure you're okay!

I appreciate that you both called and reached out to me!! I'm ok. I really feel bad for you both and the woman, if I did that. That's seems so out of character for me

👍

Thank you for responding today. I sincerely apologize again

All good! You're welcome

❤️

NOV 18 AT 1:28 PM

Hey, I just got to work. I was asked to give a statement. Corporate security is involved and she filed a police report

Omg... no!!

O↓ Can u share what you told them?

Aa

 **John Ris**

Oh no! Can u share what you told them?

 I told them that I wasn't aware of any physical contact and that I didn't serve you alcohol. I was also unaware that there was any physical contact

Ok, thank you. I will agree with you

Do u have any idea what she said?

 No idea. Just that she filed the report

This is really bad, isn't it?

 It's not good.

What do you think this means for me?

 I don't know, sorry

Oh God..

I'm just so sorry .

Should I do anything?

Aa

**John Ris**

Should I do anything?

Stick with your story. Are you on meds? Just asking, because that could help with the alcohol issue... meaning you mixed pills and alcohol, unknowingly.

Ok, thank u... I can't believe she did this

Me either

I'm just so beside myself right now

I'm so sad. Do u think they're going to call me in? I'm on a loa right now

I'm sure they'll call you for a statement

Is she filing a lawsuit?

No idea

R u in any trouble?

No

Ok thank God!

Aa


**John Ris**

Hi Abby, just checking in to see how you're doing! Hope you're okay

NOV 23 AT 1:03 PM

Hey John, I'm as good as I probably could be. I'm on administrative leave pending the investigation. Trying to stay positive 🙏🙏

Thank you for checking on me

👍

NOV 23 AT 1:44 PM

Glad you're hanging in there! I hope you have a Happy Thanksgiving 🦃

Thank you 🙏 Happy Thanksgiving to you too!

7:42 AM

Good morning John, I hope you're doing well. I haven't spoken to Delta or made any statements. I had to hire a criminal defense attorney to defend me. His name is Peter W... nd one of his investigators would like to speak to

Aa

attorney to defend me. His name is Peter Wold and one of his investigators would like to speak to you about your statement, if possible please? Im solid in my defense that I didn't do what she claims and she's already lied in her statement. Could you please help me? I'm trying to make this go away.

9:29 AM

Could I pass your number my attorney?

10:38 AM

Yeah, I'm flying now though

Delta never took a statement from you??

Ok, no worries. Whenever it's a good time for you. I can let him know. I'm solid.

No, they asked me to come in last week, but I'm having a surgery, so I couldn't make it

Oh, okay

Aa

Could I pass your number my attorney?

Yeah, I'm flying now though

Delta never took a statement from you??

Ok, no worries. Whenever it's a good time for you. I can let him know. I'm solid.

No, they asked me to come in last week, but I'm having a surgery, so I couldn't make it

Oh, okay

Hey John, would it be ok if my attorney called you tomorrow? It would really help me a lot... thank you in advance 🙏🙏🙏🙏

Yes, but everything needs to be in writing. John.ris@delta.com

Ok

Aa

# EXHIBIT E

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
A.A. and P,A. on behalf of his Infant
Daughter N.A.

|  |  |
|---|---|
| Plaintiffs, | COMPLAINT |
| -against- | DOCKET NO. 23-CV-5591 |
| DELTA AIR LINES, INC., | **JURY TRIAL DEMANDED** |
| Defendant. |  |

---------------------------------------------------X

A.A., and P.A. on behalf of his Infant Daughter N.A., (hereinafter "Plaintiffs") appearing by their

attorney, Brustein Law PLLC, complain of the defendant Delta Air Lines, Inc. ("Delta" or

Defendant"), as follows:

## PRELIMINARY STATEMENT

1.      This is a sexual assault case in which plaintiffs A.A.  and P.A. on behalf of his Infant Daughter

N.A. seek damages to redress the deprivation of their rights. Plaintiffs entrusted Delta to fly A.A. and

N.A. safely from New York to Athens, Greece.

2.      Before taking off and throughout the flight to Greece, Delta flight attendants repeatedly served

a drunken male passenger ("intoxicated Delta passenger") alcoholic drinks.

3.      The intoxicated Delta passenger was noticeably drunk, had loudly vomited in the bathroom

and both N.A. and A.A. had repeatedly sought help from the Delta flight attendants to stop serving

him alcohol and to change their seats because the intoxicated Delta passenger was inappropriately

and unwantedly touching them.

4.      Despite all of these occurrences, the Delta flight attendants blatantly ignored their pleas for

help, continued serving the intoxicated Delta passenger alcoholic beverages and required A.A. and

N.A. to sit in a cramped seat next to him.

5.      The foregoing grossly negligent actions by Delta directly and proximately resulted in A.A.

and N.A. being sexually violated by the intoxicated Delta passenger.

## JURISDICTION AND VENUE

6.      Plaintiffs reallege and incorporate by reference each and every averment set in the foregoing paragraphs.

7.      This action arises from Delta's negligence in overserving alcohol to an already-intoxicated airline passenger in violation of Federal Aviation Administration ("FAA") regulations 14 C.F.R. § 121.575(b)(1)(2018).  Accordingly, the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

8.      The Court also has jurisdiction over this matter based upon diversity jurisdiction because the Plaintiffs and Defendant are citizens of different states; and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) pursuant to 28 U.S.C.§1332.

9.      This Court also has jurisdiction over certain defendants pursuant to 28 U.S.C. §1367. The Court has pendent jurisdiction over plaintiffs' state law claims.

10.     The Court has in personam jurisdiction in this matter because Delta maintains "minimum contacts" within the State of New York sufficient to confer "general jurisdiction" to this Court in that Delta operates daily flights to and from John F. Kennedy International Airport in Queens, County New York.  Such activity constitutes "continuous and systemic" contacts with the State of New York.

11.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## JURY DEMAND

12.     Plaintiffs demand a trial by jury in this action.

## PARTIES

13.     Plaintiff A.A. (hereinafter "A.A..") resides in New York State.  She resides with her husband

Plaintiff P.A. and their sixteen year-old daughter Infant Plaintiff N.A.

**14.**     Plaintiff P.A. (hereinafter "P.A..") resides in New York State.  He resides with his wife Plaintiff A.A. and their then sixteen year-old daughter Infant Plaintiff N.A.

**15.**     Infant Plaintiff N.A.. (hereinafter "N.A.") at all relevant times was 16 years-old. She  resides in New York State with her mother A.A. and father P.A.

**16.**     Defendant Delta is a Delaware, for-profit corporation with its principal place of business in Atlanta, Georgia.  At all times material to the averments set forth herein, Delta was engaged in the transportation industry and regularly transacted and continues to regularly transact business in the State of New York, County of Queens.

**17.**     Delta places regulations, policies, and procedures for airline crew on ensuring the safety of customers at an altitude of at least 8,000 feet.

**18.**     Upon information and belief, Delta assigned flight attendants to ensure the safety of passengers onboard Delta Flight 202 from John F. Kennedy International Airport to Athens International Airport on or about July 26, 2022.

**19.**     Upon information and belief, at all relevant times, the Delta flight attendants aboard the flight were employed by Defendant as flight attendants.

### **FACTS**

**20.**     On or about July 26, 2022, Plaintiff A.A. and her daughter Infant Plaintiff N.A. were onboard Delta Flight 202 ("the Flight") from John F. Kennedy International Airport to Athens International Airport headed to Greece.

**21.**     The Flight was estimated to take eight hours and forty minutes.

**22.**     Plaintiffs A.A. and N.A. were seated in the last row of the aircraft in the middle aisle with three seats across.

**23.**     The Galley was directly behind A.A. and N.A.'s seats, where the Delta flight attendants

prepared food and drink service and sat during the flight.

24.    There was no window in their row of seats.

25.    A.A. was in the aisle seat, N.A. was in the middle seat, and a woman was assigned the interior seat.

26.    The woman assigned the seat next to N.A. was traveling with her husband who was seated separately from her.

27.    Prior to take-off the woman assigned the seat next to N.A. switched her seat with a male passenger, the intoxicated Delta passenger, so she could sit next to her husband during the flight.

28.     The intoxicated Delta passenger took the interior seat next to N.A.

29.    Prior to the plane departing, intoxicated Delta passenger asked a male Delta flight attendant for an alcoholic drink of vodka on the rocks.

30.    The male flight attendant and the intoxicated Delta passenger joked about how only an Alcoholic would request an alcoholic beverage so early on a flight.

31.    Despite joking about the intoxicated Delta passenger being an alcoholic, the male Delta flight attendant served the intoxicated Delta passenger a vodka on the rocks.

32.    Over the next few hours of the flight, the Delta flight attendants continued serving the intoxicated Delta passenger alcoholic drinks.

33.    The intoxicated Delta passenger appeared to be getting drunker and drunker as the Delta flight attendants continued serving him alcohol.

34.    14 C.F.R. § 121.575 prohibits Delta from serving any alcoholic beverages to any person aboard any of its aircraft who appears to be intoxicated.

35.    Over the first three hours of the flight, the Delta flight attendants served the intoxicated Delta passenger approximately ten vodka on ice drinks.

36.    The intoxicated Delta passenger drank every drink the Delta flight attendants served him.

37.    Even though the intoxicated Delta passenger was noticeably drunk, the Delta flight attendants

continued serving him alcoholic drinks.

**38.**    Even though the Delta flight attendants had an obligation to stop serving the intoxicated Delta passenger alcohol once he appeared intoxicated, the Delta flight attendants did not stop serving him alcohol.

**39.**    As the intoxicated Delta passenger got drunker, he began trying to speak to 16-year-old N.A. more.

**40.**    N.A. was seated in the middle seat next to the intoxicated Delta passenger.

**41.**    The intoxicated Delta passenger was slurring his speech and noticeably drunk.

**42.**    N.A. attempted to ignore the intoxicated Delta passenger but he kept trying to get N.A.'s attention.

**43.**    N.A. politely asked the intoxicated Delta passenger to stop talking to her.

**44.**    The intoxicated Delta passenger became aggressive to N.A. and began yelling at her.

**45.**    The intoxicated Delta passenger began to ask her nonsensical questions loudly.

**46.**    N.A. tried to get the intoxicated Delta passenger too leave her alone, asking him to stop talking to her and ignoring him.

**47.**    But the intoxicated Delta passenger refused to leave N.A. alone and his body language was scaring N.A.

**48.**    The intoxicated Delta passenger became belligerent and mumbled that he was from Connecticut.

**49.**    The intoxicated Delta passenger demanded to know where 16-year-old N.A. lived.

**50.**    When she responded generically with New York, the intoxicated Delta passenger demanded that N.A. tell him her address.

**51.**    N.A. was frightened by his personal questions, tone and body language and turned her back to him to tell her mother that she was scared.

**52.**    When N.A. turned away from him, the intoxicated Delta passenger began grabbing N.A.,

putting his hands on her back.

53.     Both N.A. and A.A. begged the intoxicated Delta passenger to stop talking and touching N.A.

54.      They again told the intoxicated Delta passenger that N.A. was only sixteen years old and still in high school.

55.     The intoxicated Delta passenger did not care that N.A. was a minor.

56.     The intoxicated Delta passenger aggressively reached over N.A. and began pulling and pushing A.A.'s arm.

57.     The intoxicated Delta passenger was yelling at both N.A. and A.A. so loudly that the surrounding passengers were reacting.

58.     A.A. tried to get help from Delta by calling over the Delta flight attendant from the galley.

59.     A.A. told the Delta flight attendant that the intoxicated Delta passenger was very drunk and was making both her and her 16-year-old daughter feel unsafe by yelling, making obscene gestures and touching her daughter inappropriately.

60.     The Delta flight attendant did nothing to help and just said "be patient" before walking away.

61.     As soon as the flight attendant was gone, N.A. put on headphones to try ignore him, but the intoxicated Delta passenger again began touching N.A., mumbling drunkenly, and forcefully kicking the seats in front of them causing the rows of seats to shake.

62.     Suddenly, the intoxicated Delta passenger put his head down for about thirty seconds, before shooting back up and running to the restroom.

63.     One of the Delta flight attendants said that she could hear him throwing up in the restroom.

64.     While the intoxicated Delta passenger was throwing up in the bathroom, the Delta flight attendants did not try to save A.A. and her daughter N.A.

65.     Instead, the woman seated directly in front of N.A. and A.A. turned back to them and asked if they were ok and said "I feel sorry you guys have to deal with that."

66.     Again, A.A. called the flight attendant over to inform them of the unsafe environment, the

extreme drunkenness of the passenger and the sexual and physical harassment that was happening on Delta's watch.

67.     A.A. demanded that the intoxicated Delta passenger be sent back to his original assigned seat and begged them to stop serving him alcohol.  A.A. pleaded with the Delta flight attendant to serve him coffee to sober him up.

68.     The flight attendant said "ok" but walked away without helping or doing anything.

69.     Another Delta flight attendant walked by and for the third time, A.A. pled for help and begged them to stop serving alcohol to this belligerent and sexually inappropriate drunk man.

70.     This Delta flight attendant stated, "I already know," but brushed off their concerns, telling them not to worry and walked away.

71.     Despite pleading with multiple Delta flight attendants to cut him off from alcohol, the intoxicated Delta passenger returned from throwing up in the bathroom with a glass of red wine.

72.     Distraught that her attempts to protect herself and her daughter were not working, A.A. called over yet another flight attendant for the fourth time.

73.     Again, A.A. pleaded for help but the flight attendant nonchalantly said "oh shoot I just gave him more wine."

74.     A.A. was terrified and appalled that the Delta flight attendants were not only not protecting her and her young daughter, but they were actually encouraging it by continuing to serve the intoxicated Delta passenger alcohol after A.A. had not only notified the Delta flight attendants that he had been touching her underage daughter and was belligerent and scaring them, but the flight attendants had even commented on his vomiting.

75.     A.A and N.A. asked to speak to the supervisor and the head flight attendant came over.

76.     A.A. and N.A. yet again pleaded for help recounting the events of the flight, their safety concerns, his inappropriate touching, the amount of alcohol provided by Delta, and his obvious intoxicated state.

77.     The head Delta flight attendant went to the intoxicated Delta passenger and said "the ladies next to you are complaining that you are bothering them.  Stop talking to them" and then she walked away, leaving A.A. and N.A. alone seated in the row with the drunk and belligerent intoxicated Delta passenger.

78.     As soon as the flight attendant walked away, the intoxicated Delta passenger started screaming at N.A. and A.A. yelling things like, "those fucking bitches, who do they think they are" and "cunts."

79.     Despite Delta flight attendants being within earshot of the screaming intoxicated Delta passenger, no one came to their aid.

80.     N.A. was terrified that no one was helping her or her mother find safety and that they were stuck on this aircraft, in a small row alone with the intoxicated Delta passenger.

81.     N.A. began having a panic attack.

82.     A.A. was also fearful for herself and her daughter, but Delta made it clear that there was no help coming and they needed to survive the flight seated next to the intoxicated Delta passenger.

83.     In an attempt to help N.A. with the panic attack, A.A. pulled N.A.'s head down on her lap to shelter her from the intoxicated Delta passenger.

84.     Only a few minutes after N.A. placed her head in her mother's lap did N.A. feel the intoxicated Delta passenger's clammy fingers underneath her shirt climbing up her back.

85.     N.A. was frozen as she felt the intoxicated Delta passenger's hand fingering her bra strap and moving over her body.

86.     N.A. was trembling, petrified and crying and finally got the courage to jump out of the seat and out of his reach.

87.     With N.A. out of her seat, the intoxicated Delta passenger reached over and put his hand on A.A.'s leg,

88.     The intoxicated Delta passenger began moving his hand up the inside of A.A.'s thigh towards her vagina.

89.     A.A. screamed at the intoxicated Delta passenger to stop, and A.A. sprinted out of her seat.

90.     A.A. and N.A. both went to the back galley where the flight attendants were congregated, mere feet from the assault.

91.     A.A. and N.A. explained that the intoxicated Delta passenger had been inappropriately touching them and they could not return to their seats due to their fear and safety.

92.     They demanded their seats be changed.

93.     Each Delta crew member agreed that it was horrible but reiterated that there was nothing they could do.

94.     Even after knowing that they had been sexually assaulted, the Delta flight attendants demanded N.A. and A.A. return to their seats next to the intoxicated Delta passenger.

95.     N.A. and A.A. refused and asked to speak to the Captain.

96.     The head Delta flight attendants told N.A. and A.A. that they were lucky today because the pilot was in a good mood so she would go and speak with him.

97.     As the head Delta flight attendant walked away to speak to the pilot, one of the other flight attendants said she felt bad for N.A. and A.A.

98.     The flight attendant told them that alcohol was not supposed to be served before the flight had departed and someone had unlocked the liquor and served it to the intoxicated Delta passenger, even though it was against Delta policy.

99.     This same Delta flight attendant told them that if someone presents as an alcoholic, flight attendants serve them alcohol because it is easier than denying an alcoholic alcohol and it can keep them calm throughout the flight.

100.    The head flight attendant returned to N.A. and A.A. after speaking to the pilot, and said there was nothing that they could do and said that A.A. and N.A. needed to return to their seats.

101.    Begging for help, they asked the flight attendants if any man would switch seats with them. The Delta flight attendants walked away, but came back five minutes later saying that no one would

switch their seat and that the woman originally assigned to that seat would also not change.

102.   Plaintiffs were visibly shaken and afraid to return to their seats.

103.   One of the Delta flight attendants told A.A. and N.A. that Delta could contact the police to have the intoxicated Delta passenger arrested by the police when they land, if they wanted.

104.   A.A. told the Delta flight attendant that she wanted Delta to contact the police and have the intoxicated Delta passenger arrested.

105.   Even though A.A. told the Delta flight attendant that she wanted the police contacted without any reservations or doubts, the Delta flight attendant told A.A. to calm down and think about it and that she would come back.

106.   This Delta flight attendant never came back to A.A. for the rest of the flight.

107.   Plaintiffs were still visibly shaken and afraid to return to their seats.

108.   Nikolaos, a male passenger on the flight ("Nikolaos") was going to the back of the plane when he observed N.A. crying and how upset N.A. and A.A. appeared to be.

109.   Nikolaos had not been asked by any Delta flight attendants or staff to switch his seat, nor had he heard any announcements requesting a volunteer to switch seats.

110.   After A.A and N.A. told him that the intoxicated Delta passenger had touched both of them, Nikolaos told N.A. to take his seat and he would sit next to the intoxicated Delta passenger for the rest of the flight.

111.   Nikolaos then sat for the rest of the flight between A.A. and the intoxicated Delta passenger.

112.   When the intoxicated Delta passenger woke up, he asked Nikolaos, "where is the beautiful girl?  Go back to your seat and let the beautiful girl sit next to me like before."

113.   Although he was not related to N.A., Nikolaos wanted to protect her and her mother so he told the intoxicated Delta passenger to shut up because she was his niece.

114.   The intoxicated Delta passenger stopped talking.

115.   Although N.A. was grateful to Nikolaos for switching seats, N.A. was panicked for the rest

of the flight, sitting next to strangers and isolated from her mother.

116.     At the conclusion of the flight, Delta offered Nikolaos 5,000 SkyMiles for switching seats and called him a hero.

117.     At the end of the flight, the Delta flight attendants apologized to A.A. and said that for what A.A. and N.A. had to go through, Delta was offering them 5,000 sky miles as an apology.

118.     The FAA Reauthorization Act of 2018 required:

>    (1) Each air carrier should put in place policies and procedures to address sexual misconduct, including policies and procedures to –
>    (b) facilitate the reporting of sexual misconduct to appropriate law enforcement agencies;
>    (c) communicate to personnel and passengers of the air carrier the rights of such individuals with respect to sexual misconduct;
>    (d) train personnel of the air carrier to recognize and respond appropriately to, and to notify the appropriate law enforcement agency of, sexual misconduct; and
>    (e) ensure other appropriate actions are undertaken to respond effectively to sexual misconduct; and
>    (2) individuals who perpetrate sexual misconduct should be held accountable under all applicable Federal and State laws."

119.     When the plane landed in Greece, no police were waiting at the gate to arrest the intoxicated Delta passenger.

120.     The Delta flight attendants allowed the Delta intoxicated passenger to quickly exit the plane ahead of most of the passengers seated in the back of the plane.

121.     As A.A. and N.A. exited the plane, the Delta flight attendants told them that they were sorry that it had happened to them but did not offer them any assistance.

122.     When A.A. and N.A. looked around, they did not see any police waiting.

123.     Upon information and belief, Delta did not notify any police authorities in Greece or in the United States about the sexual misconduct that had occurred on the Flight.

124.   When Plaintiffs requested information about the intoxicated Delta passenger identity so that they could have him arrested Delta protected the intoxicated Delta passenger's identity and refused to give any information to the Plaintiffs.

125.   The unwanted advances of the intoxicated Delta passenger combined with the refusal of Delta flight attendants to intervene when requested to do so by Plaintiffs constituted an unexpected event external to Plaintiffs which was beyond the usual and normal operation of the aircraft.

## FIRST CAUSE OF ACTION
Negligence

126.   Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

127.   Pursuant to 14 C.F.R. § 121.575, airlines have a duty not to "serve any alcoholic beverage to any person aboard any of its aircraft who… [a]ppears to be intoxicated…"

128.   Delta owed Plaintiffs the foregoing duty not to serve the intoxicated Delta passenger alcoholic beverages when it knew or should have known that the intoxicated Delta passenger was intoxicated.

129.   Defendant blatantly disregarded that duty.

130.   Defendant breached its duty to Plaintiffs by serving alcoholic beverages to the intoxicated Delta passenger who was already visibly intoxicated without regard to the safety and well-being of the other passengers on the aircraft including Plaintiffs.

131.   As a direct and proximate result of Defendant's breach of its duty owed to Plaintiffs, Plaintiffs have suffered injuries and damages and are entitled to the relief set forth more fully herein.

132.   As a result of Defendant's conduct, Plaintiffs have suffered, and will continue to suffer, extreme mental distress, emotional distress, humiliation, anxiety, depression, embarrassment, loss of self-esteem, insomnia, and have been otherwise greatly injured and severely damaged.

133.   As a result of the foregoing, Plaintiffs are entitled to recover compensatory damages and punitive damages in an amount to be determined at trial.

134.    Plaintiffs seek an award of pre- and post-judgment interest as permitted by law.

SECOND CAUSE OF ACTION

Civil Rights Violations Under the New York City Human Rights Law
Administrative Code of the City of New York Title 8

135.    Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

136.    Under Title 8 of the New York City Administrative Code, § 8-107(4), it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of the actual or perceived … gender… of any person directly or indirectly, to refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation."

137.    By failing to protect Plaintiffs from the sexual misconduct of the intoxicated Delta passenger and requiring them to remain seated next to him, Defendant violated Plaintiffs rights under the New York City Human Rights Law.

138.    As a result of Defendant's conduct, Plaintiffs have suffered, and will continue to suffer, extreme mental distress, emotional distress, humiliation, anxiety, depression, embarrassment, loss of self-esteem, insomnia, and have been otherwise greatly injured and severely damaged.

139.    By virtue of Defendant's actions, Plaintiffs continues to suffer loss and damage.

140.    As a result of Defendant's conduct, Plaintiffs have suffered, and will continue to suffer, extreme mental distress, emotional distress, humiliation, anxiety, depression, embarrassment, loss of self-esteem, insomnia, and have been otherwise greatly injured and severely damaged.

141.    As a result of the foregoing, Plaintiffs are entitled to recover compensatory damages and punitive damages in an amount to be determined at trial as well as attorneys' fees and costs.

142.    Plaintiffs seek an award of pre- and post-judgment interest as permitted by law.

WHEREFORE, Plaintiffs respectfully request that judgment be entered:

l.                           Awarding Plaintiffs full and fair compensatory damages in an amount to be determined by the jury; and,

2.                           Awarding Plaintiffs full and fair punitive damages in an amount to be determined by the jury; and,

3.                           Awarding Plaintiffs reasonable attorneys' fees; and,

4.                           Granting such other relief as this Court may deem just and proper.

Dated: New York, New York

July 25, 2023

                              BRUSTEIN LAW, PLLC


                              _____/s/_____
                              Evan Brustein
                              299 Broadway, 17th Floor
                              New York, NY 10007
                              (212) 233-3900

                              *Attorney for Plaintiff*

# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION**

---

| | | |
|---|---|---|
| **DELANY LUH,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **CASE NO.:** |
| | } | **JURY TRIAL DEMANDED** |
| **DELTA AIR LINES, INC.,** | } | |
| | } | |
| **Defendant.** | } | |

---

**COMPLAINT**

---

  **COMES NOW** the plaintiff, Delany Luh ("Plaintiff" or "Ms. Luh"), by and through her undersigned counsel, Law Office of James W. Friauf, PLLC, and for her Complaint against the defendant, Delta Air Lines, Inc. ("Defendant" or "Delta"), avers as follows:

## I.  NATURE OF THE CASE

1.  This is a sexual assault case.

2.  Plaintiff entrusted Delta to safely fly her home after a visit with college friends in Chicago.

3.  With no concern for its passengers, Delta blatantly overserved alcohol to an already obviously intoxicated passenger.

4.  When the passenger began acting belligerently, Plaintiff looked to Delta's flight attendant for help. She was ignored. Instead, Delta continued to serve the intoxicated passenger hard liquor.

5.  The foregoing grossly negligent actions by Delta directly and proximately resulted in Plaintiff being sexually violated by the intoxicated Delta passenger.

1

6.       Plaintiff's appalling ordeal has become all too common in the airline industry. Delta knew or should have known its actions could lead to harm to a passenger, including a sexual assault. Nevertheless, it failed to protect Plaintiff.

## II.    PARTIES

7.       Plaintiff re-alleges and incorporates by reference each and every averment set forth in paragraphs 1-6 herein, inclusive.

8.       Plaintiff Delany Luh is a resident citizen of the State of California.

9.       Defendant Delta is a Delaware, for-profit corporation with its principal place of business in Atlanta, Georgia. At all times material to the averments set forth herein, Delta was engaged in the transportation industry and regularly transacted (and continues to regularly transact) business in the State of Tennessee, County of Blount. Service of process may be perfected via Delta's registered agent, Corporation Service Company, at 2908 Poston Avenue, Nashville, Tennessee 37203.

## III.    JURISDICTION AND VENUE

10.      Plaintiff re-alleges and incorporates by reference each and every averment set forth in paragraphs 1-9 herein, inclusive.

11.      This action arises from Delta's negligence in overserving alcohol to an already-intoxicated airline passenger in violation of Federal Aviation Administration ("FAA") regulations, 14 C.F.R. § 121.575(b)(1) (2018). Accordingly, the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

12.      Additionally, the Court has jurisdiction over this matter based on diversity of citizenship: (1) Plaintiff and Defendant are citizens of different states; and, (2) the amount in controversy exceeds Seventy-five Thousand Dollars and 00/100 ($75,000.00). 28 U.S.C. § 1332.

13.      The Court has *in personam* jurisdiction in this matter. Delta maintains "minimum contacts" with the State of Tennessee sufficient to confer "general jurisdiction" to this Court. Specifically, Delta operates

2

daily flights to and from McGhee-Tyson Airport in Blount County, Tennessee. Such activity constitutes "continuous and systematic" contacts with the State of Tennessee.

14.     Venue is proper in this action pursuant to 28 U.S.C. § 1392(b)(1), in that Delta "resides": (1) in the State of Tennessee; (2) within the Court's jurisdictional boundaries. *Id.* at §§ (c)(2) and (d).

## IV.   FACTUAL ALLEGATIONS

15.     Plaintiff re-alleges and incorporates by reference each and every averment set forth in paragraphs 1-14 herein, inclusive.

16.     On or about June 16, 2018, Plaintiff boarded Flight DL 2889, departing from Chicago, Illinois destined for Los Angeles, California with a stop in Minneapolis, Minnesota.  Plaintiff was assigned Seat 20B.

17.     Plaintiff was traveling alone.

18.      Plaintiff was assigned a middle seat between two men unknown to her.

19.     Immediately upon taking her seat, Plaintiff detected a strong odor of alcohol emanating from the male sitting to her right (hereinafter "Assailant").[1]

20.     Shortly after Plaintiff took her seat, Assailant attempted to engage her in "small talk". The topics included Assailant's work and marital problems.

21.     During the conversation, Plaintiff observed Assailant's eyes were watery and bloodshot. The smell of alcohol was noticeably strong on his breath.

22.     As Assailant spoke, he leaned in close to Plaintiff, making her feel uncomfortable.

23.     Despite Assailant's obviously-inebriated state, Delta employees continuously served Assailant alcohol during the flight. Upon information and belief, Delta served Assailant as many as six to eight alcoholic beverages in the course of less than two (2) hours.

---

[1] Upon information and belief, Assailant's given name is "Will". Plaintiff noticed Assailant's name on his credit card when Assailant provided it to a Delta employee to pay for his liquor.

24.     While a flight attendant was serving Assailant one such alcoholic beverage, Plaintiff attracted the flight attendant's attention and gave her a concerned look. Plaintiff did so in an attempt to make the flight attendant aware of her discomfort without making obvious to Assailant that Plaintiff was raising concern about his intoxication level. Plaintiff worried Assailant would become agitated with her if he realized she had complained about him. The flight attendant ignored Plaintiff.

25.     As Assailant became progressively more intoxicated, the topics of the conversation he was inflicting on Plaintiff became increasingly bizarre and harassing.

26.     At one point, Assailant pretended to make a telephone call during which he told the phantom participant named "Molly" that he was going to California and was hoping to meet some "cool girls who [were] unlike this one next to [him], who [was] not being nice to [him]." Assailant continued to talk to "Molly" about Plaintiff, including referring to Plaintiff as a "bitch" and a "California Bitch" and postulating that Plaintiff was "in a gang" because of a tattoo on her hand.

27.     Upon information and belief, one (1) or more of Defendant's flight attendants overheard the comments Assailant was making about Plaintiff, but nevertheless continued to serve Assailant alcohol.

28.     After receiving no assistance from Defendant's flight crew, Plaintiff told Assailant to "back off" and that he was "in [Plaintiff's] bubble".

29.     Assailant failed to heed Plaintiff's warnings. In response, Plaintiff leaned as far as possible to the left and onto the window-seat passenger who was asleep and wearing headphones. Plaintiff had observed the window-seat passenger take what appeared to be sleep-inducing medication shortly after boarding the flight. Upon information and belief, despite Plaintiff making physical contact with the window-seat passenger in an attempt to escape Assailant's physical intrusion of Plaintiff's personal space, the window-seat passenger did not wake.

30.     In an attempt to disengage Assailant, Plaintiff eventually fell asleep.

4

31.     After having slept for a few minutes, Plaintiff was startled awake by an abrupt discomfort in her vaginal area.

32.     Plaintiff quickly realized the origin of the discomfort was from Assailant manipulating his hand inside her pants and underwear and digitally penetrating her vagina.

33.     Plaintiff responded by grabbing Assailant's arm, removing his hand from her pants, and stating "[w]hat the fuck are you doing?!?" "You need to get up!!" Several nearby passengers turned their attention to the situation as Plaintiff raised her voice to Assailant.

34.     Assailant refused to move from his seat and instructed Plaintiff to "[j]ump over [him]".

35.     Because Assailant refused to budge, Plaintiff was forced to climb over him to reach the aisle. As she did so, Assailant pointed to his genital area, where Plaintiff observed Assailant's erect penis bulging from his pants.

36.     At the time Plaintiff climbed over Assailant, his tray table was down and holding a vodka and cranberry cocktail, as well as several bottles of vodka served to Assailant by Delta employees. During the ordeal, the cocktail was knocked from the tray and spilled onto the floor, which drew the attention of additional passengers.

37.     After escaping from Assailant, Plaintiff ran down the aisle of the aircraft to a Delta employee and tearfully recounted what had occurred.

38.     After being notified of the sexual assault, Defendant's employee placed Plaintiff in a different seat and immediately proceeded to the cabin of the aircraft. Plaintiff was led to believe that the pilot and federal marshals were being notified and deployed to handle this emergent situation.

39.     Delta, nevertheless, failed to divert the flight and make a prompt landing at the nearest airport so Assailant could be apprehended by law enforcement. Rather, Delta allowed the flight to continue to its final destination (Los Angeles) unimpeded.

40.    Upon arrival at Los Angeles International Airport, Plaintiff further feared for her safety upon realizing Defendant's employees had made no contact whatsoever with federal or local law enforcement or airport security.

41.    Plaintiff was forced to notify appropriate law enforcement and airport authorities on her own after Defendant's employees allowed Assailant to exit the aircraft without incident or consequence for his abhorrent actions.

42.    Defendant's attempted remedy for Plaintiff's appalling experience was to issue her a $200.00 voucher for future travel with Delta.

43.    Plaintiff was unable to sleep for approximately-seventy-two (72) hours after the sexual assault.

44.    Plaintiff has been forced to seek therapy and take medication for severe anxiety directly and proximately caused by the sexual assault and Delta's mishandling of the same.

## V.    CAUSES OF ACTION

### Negligence:

45.    Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-44 herein, inclusive.

46.    Pursuant to 14 C.F.R. § 121.575, airlines have a duty not to "serve any alcoholic beverage to any person aboard any of its aircraft who . . . [a]ppears to be intoxicated . . .." *Id.* at §§ (b)(1).

47.    Pursuant to Sixth Circuit precedent, Delta owed Plaintiff the foregoing duty not to serve Assailant alcoholic beverages when it knew or through the exercise of reasonable diligence, should have known Assailant was intoxicated. *Chumney v. Nixon*, 615 F.2d 389 (6th Cir. 1980). Defendant blatantly disregarded that duty.

6

48.     Defendant breached its duty to Plaintiff by serving alcoholic beverages to an already visibly intoxicated Assailant without regard to the safety and well-being of the other passengers on the aircraft, including Plaintiff.

49.     As a direct and proximate result of Defendant's breach of its duty owed to Plaintiff, Plaintiff has suffered injuries and damages and is entitled to the relief set forth more fully herein.

## VI.    DAMAGES

50.     Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-49 herein, inclusive.

51.     As a direct and proximate result of each of the foregoing acts, conduct, and violations of the law as alleged herein, Plaintiff has suffered damages in an amount and according to proof, including, without limitation, physical and mental pain and suffering, embarrassment, humiliation, inconvenience, and other incidental and consequential damages.

52.     Plaintiff seeks an award of punitive damages against Defendant as its actions were in reckless disregard for the duties it owed Plaintiff.

53.     Plaintiff seeks an award of pre- and post-judgment interest as permitted by law.

## VII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

1.     Compensatory damages in an amount to be awarded by a jury, not less than ONE MILLION DOLLARS AND 00/100 ($1,000,000.00).

2.     Punitive damages in an amount to be awarded by a jury, not less than FIVE MILLION DOLLARS AND 00/100 ($5,000,000.00).

3.     Incidental and/or consequential damages in an amount to be determined by a jury.

4.     Any and all further relief this Honorable Court deems just and appropriate.

7

Respectfully submitted this 24th day of September, 2018.

**DELANY LUH**

By: _/s/ James W. Friauf_
James W. Friauf (#027238)
LAW OFFICE OF JAMES W. FRIAUF, PLLC
9724 Kingston Pike, Suite 104
Knoxville, Tennessee 37922
Tele: (865) 236-0347
Fax: (865) 512-9174
Email: james@friauflaw.com
Our File No. 18-185-INJ

*Attorney for Plaintiff, Delany Luh*

8

# EXHIBIT G

# EXHIBIT 1

DB

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

RHONDA COSTIGAN,

      Plaintiff,

                              Case No.: 17-        -NO
vs                             Hon.:

DELTA AIRLINES, INC., a Foreign
Corporation and EXPRESSJET
AIRLINES, INC., a Foreign Corporation,

      Defendants,

_____/

GERALD H. ACKER P32973
Attorney for Plaintiff
17000 W. Ten Mile Road, 2nd Floor
Southfield, Michigan 48075
(248) 483-5000

_____/

17-008558-NO
FILED IN MY OFFICE
WAYNE COUNTY CLERK
6/9/2017 2:31:36 PM
CATHY M. GARRETT

> THERE IS NO OTHER PENDING OR RESOLVED
> CIVIL ACTION ARISING OUT OF THE SAME
> TRANSACTION OR OCCURRENCE AS
> ALLEGED IN THIS COMPLAINT.

## PLAINTIFF'S VERIFIED COMPLAINT AND JURY DEMAND

    NOW COMES Plaintiff herein, RHONDA COSTIGAN, by and through her attorneys, GOODMAN ACKER, P.C., and for her cause of action against Defendant, DELTA AIRLINES, INC., states as follows:

### COMMON ALLEGATIONS

1.    That Plaintiff, RHONDA COSTIGAN, is a resident of the City of Garden City, County of Macomb, State of Michigan.

2.    That Defendant, DELTA AIRLINES, INC., hereinafter referred to as "DELTA", is a Foreign corporation duly authorized to transact the business in the State of Michigan and does in fact regularly and systematically conduct this business in the County of Wayne, State of

1

Michigan accepting service through CSC-Lawyers Incorporating Service (Company), 601 Abbot Road, East Lansing, MI 48823.

3. That Defendant, EXPRESSJET AIRLINES, INC., hereinafter referred to as "EXPRESSJET", is a Foreign corporation duly authorized to transact the business in the State of Michigan and does in fact regularly and systematically conduct this business in the County of Wayne, State of Michigan accepting service through The Corporation Company, 40600 Ann Arbor Road E, Suite 201, Plymouth, MI 48170.

4. That the amount in controversy exceeds the sum of Ten Million ($10,000,000.00) Dollars, exclusive of interest, costs and attorney fees.

5. At all relevant times Defendant DELTA and/or EXPRESSJET owned, possessed, and/or controlled Flight No. 5203 whereon the acts described below were committed.

## FACTUAL ALLEGATIONS

6. That Plaintiff incorporates by reference the previous allegations, as if restated word for word and paragraph by paragraph.

7. On or about April 12, 2016, Plaintiff purchased an airplane ticket on Defendants DELTA and/or EXPRESSJET flight for a round trip flight from Detroit, Michigan to Myrtle Beach, South Carolina.

8. On or about July 15, 2016, Plaintiff flew aboard Defendants DELTA and/or EXPRESSJET Flight Number 5203 from Detroit, Michigan to Myrtle Beach, South Carolina.

2

9. On or about July 27, 2016, Plaintiff, along with her fifteen (15) year old daughter, boarded Defendants DELTA's and/or EXPRESSJET's Flight No. 5203, along with other passengers at Myrtle Beach International Airport.

10. After takeoff from Myrtle Beach International Airport, a Defendants DELTA and/or EXPRESSJET flight attendant observed another passenger in his assigned, first class seat masturbating with his penis exposed.

11. Upon information and belief, Defendants DELTA and/or EXPRESSJET employee then notified the pilot who contacted the Detroit Metro Airport Police regarding the incident.

12. Rather than supervising the sexual deviant passenger known to Defendants DELTA and/or EXPRESSJET, Defendants DELTA and/or EXPRESSJET allowed the sexual deviant passenger to roam the plane without supervision.

13. Before the plane landed, and with knowledge of a Defendants DELTA and/or EXPRESSJET employee, the sexual deviant passenger went to the back of the plane to use the bathroom.

14. On the way back from the bathroom, the sexual deviant passenger sat in an empty seat next to Plaintiff, who was seated in a window seat.

15. Shortly after the sexual deviant passenger sat down, he placed his hand on Plaintiff's upper thigh and began to rub her bare skin.

16. While he was doing this, the sexual deviant passenger told Plaintiff that he "liked white women" and asked "where's your man?"

3

17. The sexual deviant passenger continued to touch the Plaintiff's bare thigh and Plaintiff repeatedly asked him to stop.

18. The sexual deviant passenger then put part of his hand underneath Plaintiff's shorts and continued to touch her.

19. Plaintiff, seated in a window seat, was trapped by the sexual deviant passenger and had no place to flee.

20. When the sexual deviant passenger realized the plane was landing, he returned to his seat.

21. After returning to his seat, the sexual deviant passenger resumed rubbing his exposed penis, which was observed by a second Defendants DELTA and/or EXPRESSJET flight attendant.

22. After the plane landed, the sexual deviant passenger was arrested for incident exposure and assault.

## COUNT I - NEGLIGENCE, GROSS NEGLIGENCE AND/OR RECKLESSNESS AGAINST DEFENDANTS DELTA AND/OR EXPRESSJET

23. That Plaintiff incorporates by reference the previous allegations, as if restated word for word and paragraph by paragraph.

24. At all times relevant to this lawsuit, Defendants DELTA and/or EXPRESSJET was the owner of the subject aircraft and was thus responsible for the negligence, gross negligence and/or recklessness of its employees.

25. Defendants DELTA and/or EXPRESSJET, via its employees, had a duty to its passengers, but specifically to Plaintiff, to keep Plaintiff reasonably

4

safe and to protect Plaintiff from all known hazards, including known sexual deviant passengers.

26. Defendants DELTA and/or EXPRESSJET committed acts of negligence, gross negligence, willful and wanton misconduct described previously. Defendants DELTA and/or EXPRESSJET committed acts of negligence which include, but are not limited to, the following:

   a. Allowing a passenger with known sexual deviant tendencies to roam around Flight 5203 as he pleased;

   b. Failing to properly supervise the passenger and provide protection to Plaintiff, as is the duty of a business to its business invitees;

   c. Failing to monitor the conduct of passengers, so as to provide a safe flight for business invitees;

   d. Failing to intervene on behalf of the Plaintiff so as to prevent the egregious acts of the known sexual deviant passenger;

   e. Failing to have safeguards in place to prevent sexual assaults of business invitee's

   f. Failing to implement safety policies, protocols and procedures to protect individuals such as Plaintiff, from known sexual deviant passengers;

   g. Negligent failure to make a proper pre-flight inspection;

   h. Negligent failure to maintain the aircraft in a safe condition for its passengers;

   i. Negligent failure to protect or warn its passengers from unreasonable risk of harm, such as a known sexual defiant passenger;

   j. All other damages learned through the course of discovery.

27. As a direct and proximate result of Defendants DELTA's and/or EXPRESSJET's negligence, gross negligence and/or reckless conduct, Plaintiff was seriously and permanently injured, and thus Plaintiff, has

17000 West Ten Mile Road, Second Floor • Southfield, Michigan 48075 • Phone 248.483.5000 • Fax 248.483.3131

GOODMAN ACKER P.C.

Detroit's Trusted Law Firm

and will continue to suffer damages into the future, including, but not limited to:

a. Severe emotions and mental distress;

b. Economic losses;

c. Humiliation, grief, embarrassment;

d. Fright and shock;

e. Inability to experience social pleasures and enjoyment;

f. Physical manifestations including shaking of hands, nausea, sleeplessness and other physical manifestations;

g. Loss of earning capacity;

h. All additional injuries and damages discovered throughout the course of this litigation.

28. That as a further direct and proximate result of the acts of negligence and/or omissions of the Defendants DELTA and/or EXPRESSJET, Plaintiff was required to incur substantial expenses for reasonable and necessary care and attention, and rehabilitative therapy, in an attempt to alleviate and cure the pain, discomfort, mental anguish and permanent injuries sustained in the hereinbefore incident, and will continue to do so in the future.

29. That in the event the Plaintiff, RHONDA COSTIGAN, was suffering from any of the medical or emotional conditions then, and in that event, Plaintiff claims that these injuries were precipitated, aggravated and/or accelerated by reason of the foregoing incident.

6

WHEREFORE, Plaintiff, RHONDA COSTIGAN, respectfully requests this Honorable Court enter Judgment in her favor and against DELTA AIRLINES, INC. and/or EXPRESSJET AIRLINES, INC. in the amount of Ten Million ($10,000,000.00) Dollars, or whatever amount the trier of fact finds the Plaintiff to be entitled, along with an award of exemplary damages, including costs, interest and attorney's fees.

## COUNT II – NEGLIGENT INFLICTION OF EMOTIONAL DISTRSS AGAINST DEFENDANTS DELTA AND/OR EXPRESSJET

30.    That Plaintiff incorporates by reference the previous allegations, as if restated word for word and paragraph by paragraph.

31.    Defendants DELTA and/or EXPRESSJET, by and through its agents, inflicted great emotions distress upon Plaintiff by way of their negligent facilitation of the aforementioned inappropriate and improper acts.

32.    The aforementioned inappropriate and improper acts constitute extreme and outrageous conduct, which caused Plaintiff to suffer severe injuries, including humiliation, indignity and injury to her psyche including, but not limited to the following, all of which shock the conscience of the community:

   a. Failing to properly supervise a known sexual deviant passenger and provide protection to Plaintiff, as is the duty of a business to its business invitees.

33.     As a direct and proximate results of the Defendants' actions, all of which constitute negligence infliction of emotion distress, Plaintiff has suffered:

   a.  Severe emotions and mental distress;

   b.  Economic losses;

   c.  Humiliation, grief, embarrassment;

7

d. Fright and shock;

e. Inability to experience social pleasures and enjoyment;

f. Physical manifestations including shaking of hands, nausea, sleeplessness and other physical manifestations;

g. Loss of earning capacity;

h. All additional injuries and damages discovered throughout the course of this litigation.

WHEREFORE, Plaintiff, RHONDA COSTIGAN, respectfully requests this Honorable Court enter Judgment in her favor and against DELTA AIRLINES, INC. and/or EXPRESSJET AIRLINES, INC. in the amount of Ten Million ($10,000,000.00) Dollars, or whatever amount the trier of fact finds the Plaintiff to be entitled, along with an award of exemplary damages, including costs, interest and attorney's fees.

Respectfully submitted,

**GOODMAN ACKER, P.C.**

/s/ Gerald H. Acker
GERALD H. ACKER P32973
Attorney for the Plaintiff

Dated: June 9, 2017

*Rhonda Costigan*

**RHONDA COSTIGAN**
I declare that the statements above
are true to the best of my information,
knowledge and belief.

8

# EXHIBIT H

Magistrate Judge S. Kate Vaughan

```
_____ FILED    _____ ENTERED
_____ LODGED   _____ RECEIVED

        JUL 17 2023

              AT SEATTLE
         CLERK U.S. DISTRICT COURT
       WESTERN DISTRICT OF WASHINGTON
BY                            DEPUTY
```

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. MJ23-358 |
| Plaintiff | |
| | COMPLAINT for VIOLATION |
| v. | |
| JACK ALLEN ROBERSON, | 18 U.S.C. Section 2244(b); and |
| Defendant. | 49 U.S.C. Sections 46506(1) |

BEFORE, S. Kate Vaughan, United States Magistrate Judge, U. S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT 1
### (Abusive Sexual Contact)

On or about July 16, 2023, within the special aircraft jurisdiction of the United States, that is, while aboard Delta Air Lines Flight 452, an aircraft in flight traveling nonstop from Atlanta, Georgia, to SeaTac, King County, Washington, within the Western District of Washington and elsewhere, JACK ALLEN ROBERSON did knowingly and

Complaint - 1
*United States v. ROBERSON*
USAO No. 2023R00777

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

intentionally engage in sexual contact with Victim 1 (a juvenile), that is, touch Victim 1's inner thigh and groin, without Victim 1's permission and with the intent to abuse, humiliate, harass, degrade, and arouse and gratify the sexual desire of any person.

All in violation of Title 18, United States Code, Section 2244(b) and Title 49 United States Code, Section 46506(1).

And the complainant states that this Complaint is based on the following information:

I, Oliver Cunningham, being first duly sworn on oath, depose and say:

**INTRODUCTION**

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since January 2021.  I presently am assigned to work at the Seattle Headquarters office. I am currently assigned to the Safe Streets Task Force and am responsible for investigating violent crimes; including gangs, kidnappings, crimes aboard aircraft, and crimes on the high seas. I am currently designated as an Airport Liasion Agent (ALA) for violent crime for the SeaTac International Airport (SEA). Per United States Code, Title 49, Section 46506, Special Aircraft Jurisdiction of the United States, the FBI has been designated as the law enforcement agency responsible for investigating crimes that occur onboard an aircraft once the doors have closed post boarding, including interference with a flight crew, or any physical or sexual assault. Moreover, I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2.      I am a graduate of the Federal Bureau of Investigation Basic Field Training Course.  During this 21-week training, I received training in interviewing and interrogation techniques; arrest procedures; search and seizure; and surveillance techniques.  Prior to this employment, I obtained a Bachelor of Arts in Spanish and Government and Legal Studies and a Masters of Arts in International Relations. I have

Complaint - 2
*United States v. ROBERSON*
USAO No. 2023R00777

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

five years' experience working in non-profit organizations in international development and four years' experience managing projects and programs for private companies. During my career with the FBI, I have had training and experience investigating violent crimes against persons and crimes against the government. As an Airport Liasion Agent, I have been involved in several investigations involving offenses occurring in the special aircraft jurisdiction and the special maritime and territorial jurisdiction of the United States, including physical and sexual assaults.

3.     This affidavit is made based upon my personal knowledge, training, experience and investigation, as well as upon information provided to me and my review of reports prepared by other law enforcement personnel. This affidavit is made for the purpose of establishing probable cause for this Complaint and thus does not include each and every fact known to me concerning this investigation.

## SUMMARY OF PROBABLE CAUSE

4.     I have reviewed reports, documents, and statements related to events that occurred on July 16, 2023, aboard Delta Air Lines flight 452 Atlanta to SeaTac. According to the reports, documents, and statements I reviewed, Delta Air Lines flight 452 left Atlanta, Georgia en route to SeaTac, Washington, within the Western District of Washington on July 16, 2023.

5.     Victim 1, whose full name is known to me but not included here because Victim 1 is a juvenile and this is a public filing, boarded flight 452 and took her seat in row 17. Victim 1, who is 15 years old, was travelling with her guardian, J.F, and J.F's 12-year-old daughter, K.R. When Victim 1 boarded the plane, ROBERSON was already sitting in the aisle seat 17D. J.F told him that he was in the wrong seat, and ROBERSON moved to 17F, the window seat. Victim 1 sat in the middle seat next to ROBERSON in 17E, on his left hand side, with K.R in the aisle seat on her left.

6.     Victim 1 told investigators that shortly after departure, ROBERSON dropped his headphones and Victim 1 retrieved them for him, and ROBERSON said

Complaint - 3
*United States v. ROBERSON*
USAO No. 2023R00777

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

"Thank you, I don't know what I would do without you". Victim 1 stated ROBERSON had two drinks on the flight and then appeared to fall asleep. While he appeared asleep, ROBERSON's pinky touched the outside of her bare thigh for approximately two minutes. Victim 1 assumed this was accidental touching because ROBERSON was asleep. Several minutes later, Roberson placed his hand on Victim 1's leg, and slowly moved his hands up her thigh, and under her skirt, close to her genitals. Victim 1 stated ROBERSON kept his hand in a fixed position under her skirt for approximately two minutes before she got up and told J.F. Victim 1 did not give ROBERSON permission to touch her.

7.      Special Agent Minh Truong talked to J.F on the telephone. J.F stated that she was notified by Victim 1 of the incident. Victim 1 notified her when K.R got up to go to the bathroom. Victim 1 told J.F that the man next to her touched her. J.F then switched seats with Victim 1. Once J.F was seated between Victim 1 and ROBERSON, Victim 1 told J.F. that ROBERSON touched her under her skirt. J.F then contacted the flight crew, who re-seated ROBERSON.

8.      Port of Seattle Police Officer M. Donahue spoke with Delta flight attendant Essie Gardner.  Gardner reported that she was contacted by an adult female passenger travelling with two juvenile passengers. The female passenger reported that the adult male seated next to her "niece" had touched her niece's leg and put his hand under her skirt. Gardner then moved the adult male passenger to another seat.

9.      Investigators interviewed ROBERSON after the flight landed. According to ROBERSON's statements to investigators, during the flight, ROBERSON had two double vodka tonics. Later, ROBERSON stated he had had up to eight additional drinks at the airport before the flight and did not have any food. At some point, ROBERSON dropped his headphones, and Victim 1 picked them up and handed them back to him. ROBERSON said "thank you" approximately four times and patted Victim 1's bare skin on her leg on each occasion. ROBERSON then went to sleep. Approximately two hours

Complaint - 4
*United States v. ROBERSON*
USAO No. 2023R00777

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

later the woman in 17D (J.F) switched seats with Victim 1, and then the flight attendants
re-seated ROBERSON.

## **CONCLUSION**

10.      Based on the aforementioned facts, I respectfully submit that there is
probable cause to believe that JACK ALLEN ROBERSON committed the offense of
Abusive Sexual Contact, in violation of Title 18, United States Code, Section 2244(b)
and Title 49, United States Code, Section 46506(1).


OLIVER CUNNINGHAM, Complainant
Special Agent, FBI


Based on the Complaint and Affidavit sworn to before me, and subscribed in my
presence, the Court hereby finds that there is probable cause to believe the Defendant
committed the offenses set forth in the Complaint.


Dated this 17th day of July, 2023.


The Honorable S. Kate Vaughan
United States Magistrate Judge

Complaint - 5
*United States v. ROBERSON*
USAO No. 2023R00777